UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12342 GAO

THOMAS MCLEAR,
    Plaintiff

MAGISTRATE JUDGE Alexander

**COMPLAINT**

PROVIDENT LIFE AND
ACCIDENT INSURANCE CO.,
UNUM PROVIDENT CORP.
IVEX PACKAGING CORP.,
LONG TERM DISABILITY
PLAN,
    Defendants

AMOUNT $150
SUMMONS ISSUED yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY CLK F.O.M
11/20/03

**INTRODUCTION**

1. Plaintiff, Thomas McLear ("Mr. McLear"), brings this action against the Defendants, Provident Life and Accident Insurance Co. ("Provident"), Unum Provident Corporation ("UnumProvident"), and Ivex Packing Corporation Long Term Disability Plan ("Plan") (collectively referred to as "Defendants") for violation of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et. seq. ("ERISA"). Mr. McLear is a participant in an ERISA welfare benefit plan that is underwritten and insured by Provident and UnumProvident. The name of the welfare benefit plan is the Ivex Packing Corporation Long Term Disability Plan. The Plan number is 124883-00023.

2. This Complaint challenges: (1) the Defendants unlawful termination of Mr. McLear's Long Term Disability ("LTD") total disability benefits without appropriate justification and without granting him a full and fair review of his claim for benefits; (2) the Defendants' pattern of rejecting and/or ignoring the opinions of Mr. McLear's treating and examining physicians in an attempt to deprive him of the appropriate LTD benefits

he is due; and (3) the Defendants' failure to provide a reasonable claims procedure that would yield a decision on the merits of Mr. McLear's claim.

3. Mr. McLear is filing this action to recover benefits due under the Plan, to enforce the present rights existing therein, to clarify rights under the terms of the Plan, and to recover costs and attorneys' fees as provided by ERISA.

## JURISDICTION

4. This Court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e)(2) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Plan is administered in this district.

## PARTIES

5. Mr. McLear is a 62-year-old individual who currently resides in Attleboro, Massachusetts. Mr. McLear is a vested participant in a Provident employee benefit plan, within the meaning of 29 U.S.C. § 1002(2)(7). Mr. McLear has standing to bring this action under 29 U.S.C. § 1132(a).

6. The defendant, Provident, is a for-profit corporation with its principal place of business at 1 Fountain Square, Chattanooga, TN 37402. Provident transacts business in Massachusetts and insures and underwrites the Plan under which Mr. McLear is suing. Provident is the party responsible for processing claims made under the Plan and making a final determination as to Plan participants' eligibility for LTD benefits.

7. The defendant, UnumProvident Corporation, is a for-profit corporation with its principal place of business at 1 Fountain Square, Chattanooga, TN 37402. UnumProvident Corporation transacts business in Massachusetts and insures and underwrites the Plan

under which Mr. McLear is suing. UnumProvident Corporation owns Provident Life and Accident Insurance Company.

8. At all times relevant to the claims asserted in this Complaint, Provident and UnumProvident purported to act as an ERISA claims fiduciaries with respect to participants of the Plan, generally, and specifically, with respect to Mr. McLear, within the meaning of ERISA.

9. The Plan under which Mr. McLear is suing is a "long term disability plan" issued by Unum to Ivex Packing Corporation, a Massachusetts company with its principal place of business at 100 Tri-State Drive, Suite 200, Lincolnshire, Illinois 60069. The Group Plan Number is 124883-0002.

## STATEMENT OF FACTS

### Insurance Entitlement, Definitions of Disability, Discretion

10. In 1959, Mr. McLear began working at Ivex Packaging Corporation (Ivex).

11. Mr. McLear became insured under the Unum Plan in or about 1998, when Ivex switched its LTD coverage to Provident.

12. Under the terms of the Plan, Ivex has no discretionary authority to determine a participant's eligibility for LTD benefits and to interpret the terms and provisions of the Plan.

13. Provident and UnumProvident both fund and administer the Plan under which Mr. McLear is suing.

14. The Plan provides for the payment of LTD benefits when an insured person becomes either residually or totally disabled.

15. The Plan defines "Totally Disabled During Own Occupation Period" in the following manner:

    Total Disability or Totally Disabled means that you:

    1) Are unable to perform all the material duties of your own occupation on a full-time or part-time basis because of an Injury or Sickness that started while insured under the Policy;
    2) do not work at all in any occupation; and
    3) are under Physician's Care.

16. The Plan defines "Total Disability During Any Occupation Period" in the following manner:

    You will be Totally Disabled if you are unable to work in any occupation for which you are or may become suited by education, training, or experience

17. The Plan defines "Any Occupation Period" in the following manner:

    Any Occupation Period starts on the day following expiration of the own occupation period and continues no longer than the Maximum Benefit Period shown in Section II-Schedule of Insurance.

18. "Injury" is defined under The Plan as "an accidental bodily injury requiring treatment by a Physician."

19. "Sickness" is defined under The Plan as "an illness, or disease, including pregnancy or complications of pregnancy, requiring treatment by a Physician."

20. Under the Plan, benefits are payable until the insured is no longer disabled, or until the age of 65.

21. Except for the definition of "Injury", "Sickness" and "Totally Disabled In Own Occupation Period" quoted above in this Complaint, the Plan contains no other definition or explanation of the terms disability.

22. The plan contains no time at which the Own Occupation Period expires.

4

23. At the time that his benefits were terminated, Mr. McLear was receiving approximately $2366.47 in monthly benefits under his Plan.

### Mr. McLear's Claim for LTD Benefits

24. Mr. McLear has presented a timely claim to Provident and UnumProvident, asserting that he is an insured person, that he became totally disabled while insured, and that he is entitled under the Plan to LTD benefits for the period of time beginning in August 1, 2002, when Provident and UnumProvident wrongfully terminated his benefits, and continuing thereafter without interruption through to the present, and continuing in the future until he reaches the age of 65 or is no longer disabled.

### Mr. McLear' Application for LTD Benefits

25. Mr. McLear suffers from lumbar sprain disc syndrome, bilateral sciatic neuritis, myofascitis, and epidural scarring.

26. In early November 1999, Mr. McLear developed acute pain in his middle back, followed by four incapacitating flare-ups.

27. Mr. McLear was diagnosed with a large disc herniation of L2-3 on December 2, 1999. This diagnosis followed from the results of a MRI ordered by Dr. Barry MacEwen, Mr. McLear's chiropractor at the time.

28. On February 29, 2000, Mr. McLear underwent an L2-3 discectomy performed by Dr. Ronald Birkenfeld at Milton hospital in Massachusetts.

29. A postoperative evaluation by Dr. Birkenfeld indicated bilateral pain in the posterior thighs brought on by standing or walking for more than ten minutes.

30. Mr. McLear's thigh pain was further exacerbated by back pain brought on by activity. This pain persisted despite physical therapy pursued at the Cape Cod rehabilitation center.

31. In treatment beginning after the surgery and continuing until the present day, Dr. MacEwen has identified the causes of Mr. McLear's pain as lumbar sprain disc syndrome, bilateral sciatic neuritis, and myofascitis brought on by either or both the injury and the surgery.

**Social Security Disability Income**

32. On October 13, 2002, the Social Security Administration ("SSA") found Mr. McLear disabled effective November 24, 1999, with benefits beginning May 1, 2000.

33. In his decision to award Mr. McLear Social Security Disability Income ("SSDI") benefits, Judge William Cowan stated:

> In particular, the postoperative MRI showing epidural scarring and the physical capacity evaluation by Dr. MacEwen were submitted at the time of hearing. Furthermore, the claimant testified at length regarding his course of treatment and his physical limitations. Dr. Bianchi was able to review the medical record in its entirety and listen to the claimant sworn testimony. In weighing the opinion evidence in the present case, because of his knowledge of the entire record, the undersigned gives his opinion significant probative weight...
>
> The claimant has been under a disability as defined in the Social Security Act, since November 24, 1999 (20 CFR § 404.1520 (d))...
>
> Even if the claimant's condition fell short of the listing standard, he would be found disabled by applying the medical-vocational guidelines. The physical capacity evaluation of Dr. MacEwen, which the undersigned finds persuasive, indicates that the claimant would be restricted to less-than-sedentary exertion. His past relevant work, according to the testimony of the impartial vocational expert at the hearing, was medium level, semi-skilled work with transferable skills to the light (but not sedentary) exertional level. Thus the claimant would be incapable of performing his past relevant work and would be found grid-disabled using grid rule 201.06 as a guideline for decision-making.

34. Provident and UnumProvident certified Mr. McLear's ongoing disability from November 1999 to August 2002.

**Termination of Mr. McLear's Benefits**

35. On August 1, 2002, Mr. Bejan Poureshmenantalemy of UnumProvident sent a letter to Mr. McLear informing him that his benefits were being terminated as Provident and UnumProvident found him able to work at a medium occupational level. In his August 1, 2002 letter, Mr. Poureshmenantalemy indicated that "on August 23, 2000 Dr. Ronald Birkenfeld indicated 'no neurological abnormality and the postoperative MRI looked excellent and I have nothing further to offer as a surgeon. Was told to finish therapy and the [sic] to inquire with his employer if he might return, at least initially, on a part-time basis. Since he said he can avoid heavy lifting and is already on his feet to better part of the day and doing quite well, I see no reason why this would not be a reasonable option.'"

36. Mr. Poureshmenantalemy further justified UnumProvident's termination of Mr. McLear's benefits on the following basis: his understanding of "the restrictions given by Dr. MacEwen as standing, walking and sitting a total of 4 hours each per day... no lifting over 25 pounds with occasional bending, twisting and squatting."

37. Finally, Mr. Poureshmenantalemy concluded in his August 1, 2002 letter: "It is noted in the records from Dr. MacEwen that you were able to plow snow, lift a refrigerator with your neighbor's help and generally work about the house."

38. In light of the above, UnumProvident erroneously determined that Mr. McLear was no was able to "perform at a medium work level."

39. According to UnumProvident, Mr. McClear's occupation was classified as "medium work level."

40. On October 3, 2002 Mr. McLear appealed this decision through his attorney James J. Gannon.

41. In his appeal letter, Mr. McLear refers to his sworn testimony that he moved the refrigerator in concert with another person in an emergency fire situation. Furthermore, he refers to testimony that after this and the blowing of snow, his symptoms were severely aggravated.

42. As part of his appeal, Mr. McLear included a physical capacities evaluation and medical questionnaire from Dr. Barry MacEwen. In these documents, Dr. MacEwen certified Mr. McLear's total disability as a result of myofascitis and bilateral sciatic neuritis

43. Mr. McLear's appeal also included a copy of the SSA's decision to award Social Security Disability Insurance to Mr. McLear, as well as all accompanying documents.

**Final Denial**

44. On November 27, 2002, Terry Neal of Provident and UnumProvident wrote counsel for Mr. McLear confirming Provident and UnumProvident's termination of Mr. McLear's benefits on the basis that nothing in the appeal indicated an inability to work at a medium work level.

45. UnumProvident's determination in this regard was in error. In fact, Mr. McLear's appeal contained a physical capacities evaluation, a medical report, and a decision by a Social Security Administrative Judge certifying an inability to work at even a sedentary level.

46. Mr. McLear has exhausted his administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

47. Provident and UnumProvident failed to meet their burden of establishing that Mr. McLear's condition had changed to such a degree that he was no longer totally disabled under the terms of the Plan.

48. Provident and UnumProvident failed to provide Mr. McLear a full and fair review of his claim for LTD benefits.

49. The self-serving nature of Provident and UnumProvident's decision that Mr. McLear is no longer disabled is illuminated by the fact that Mr. McLear's condition has not changed since Unum first accepted liability on his claim for benefits.

50. The decision to deny Mr. McLear's benefits was wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan and contrary to law.

51. Provident and UnumProvident were influenced by their financial conflict of interest, as both the administrator of the plan and the payor of benefits thereunder, when it denied Mr. McLear's benefits.

52. Due to the unlawful denial of benefits under ERISA, Mr. McLear has lost his rightful long-term disability benefits.

53. Due to the unlawful denial of benefits under ERISA, Mr. McLear has also lost the use of his long-term disability benefits.

54. Having exhausted the administrative procedures provided by Unum, Mr. McLear now brings this action.

### FIRST CAUSE OF ACTION
### (Enforcement of Terms of Plan
### Action for Unpaid Benefits)
### (ALL DEFENDANTS)

55. Mr. McLear realleges each of the paragraphs above as if fully set forth herein.

56. The Plan is a contract.

57. Mr. McLear has performed all of his obligations under the contract.

58. 29 U.S.C. § 1132(a)(1)(B) states that:

    A civil action may be brought ---

    (1) by a participant or beneficiary –

    (A) for the relief provided for in subsection (c) of this section, or

    (B) to recover benefits due to him under the terms of her plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

59. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

60. In accordance with 29 U.S.C. §1132, Mr. McLear is entitled to be paid benefits under the Plan based upon his disabled status from and after February 2002, and continuing into the present.

61. The Defendants have refused to provide Mr. McLear with these disability benefits and are, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

62. As a direct and proximate result of this breach, Mr. McLear has lost the principal and the use of his rightful LTD benefits.

**SECOND CAUSE OF ACTION**
**(Attorneys' Fees and Costs)**
**(ALL DEFENDANTS)**

63. Mr. McLear realleges each of the paragraphs above as if fully set forth herein.

64. Under the standards applicable to ERISA, Mr. McLear deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

65. The Defendants have the ability to satisfy the award.

66. Mr. McLear's conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all participants.

67. The Defendants have acted in bad faith in denying Mr. McLear's benefits under the Plan.

68. The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1) Declare, adjudge and decree that Mr. McLear is entitled to ongoing LTD benefits as calculated under the terms of the Plan.

(2) Award Mr. McLear the full amount of unpaid benefits under the Plan to which he is entitled, together with such pre-judgment interest as may be allowed by law.

(3) Order that the Defendants make restitution to Mr. McLear in the amount of any losses sustained by Mr. McLear in consequence of the wrongful conduct alleged herein, together with prejudgment interest.

(4) Award Mr. McLear the costs of this action and reasonable attorneys' fees; and

(5) Award such other relief as the court deems just and reasonable.

Date:   November 20, 2003                    Respectfully submitted for the Plaintiff,

                                             By:   _____
                                                   Mala M. Rafik
                                                   BBO No. 638075
                                                   ROSENFELD & RAFIK, P.C.
                                                   44 School Street, Suite 410
                                                   Boston, MA 02108
                                                   617-723-7470